UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KADEEM JOHN,

        Plaintiff,

-against-

CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CORRECTION ("DOC")
SUPERVISING WARDEN ARTHUR OLIVARI;
CHIEF OF DEPARTMENT LARRY W. DAVIS,
SR.; WARDEN EMMANUEL BAILEY;
DEPUTY WARDEN WALTER NIN;
CORRECTION OFFICER "DJ" DOE; and
CORRECTION OFFICER JOHN DOES #1-#5,

        Defendants.

No. 11 Civ. 5610 (RPP)

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION

Emery Celli Brinckerhoff & Abady LLP
75 Rockefeller Plaza, 20th Floor
New York, New York 10019
(212) 763-5000

TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ................................................................................................. ii-iii

PRELIMINARY STATEMENT ................................................................................................ 1

FACTS ........................................................................................................................................ 2

    *The Underlying Incident* ........................................................................................................ 2

    *The Request for Investigation* ............................................................................................... 4

    *Revelations of Investigation and Spoliation* ......................................................................... 5

ARGUMENT .............................................................................................................................. 6

    I.    DEFENDANTS HAD A DUTY TO PRESERVE THE VIDEO RECORDINGS SINCE, AT THE LATEST, JULY 12, 2010 ............................................................... 7

    II.    DEFENDANTS WERE CULPABLE IN FAILING TO PRESERVE THE VIDEO RECORDING ................................................................................................................ 9

    III.    THE VIDEO RECORDING WAS PLAINLY RELEVANT .................................... 10

    IV.    AN ADVERSE INFERENCE, PRECLUSION, AND FEES ARE APPROPRIATE REMEDIES ............................................................................................................... 11

        A.    The Court Should Grant an Adverse Inference ............................................... 11

        B.    The Court Should Preclude Evidence Relating to the Video Recording and Its Review ......................................................................................................... 12

        C.    Attorneys' Fees are Appropriately Awarded ................................................... 13

CONCLUSION ........................................................................................................................ 14

# TABLE OF AUTHORITIES

**PAGE NO(s):**

**FEDERAL CASES:**

*Aiello v. Kroger Co.*,
    2:08-CV-01729-HDM, 2010 WL 3522259 (D. Nev. Sept. 1, 2010) .......................................... 13

*Arista Records LLC v. Usenet.com, Inc.*,
    608 F. Supp. 2d 409 (S.D.N.Y. 2009) ........................................................................................ 13

*Byrnie v. Town of Cromwell, Bd. of Educ.*,
    243 F.3d 93 (2d Cir. 2001) ............................................................................................................ 7

*Casale v. Kelly*,
    710 F. Supp. 2d 347, 366 (S.D.N.Y. 2010) ........................................................................... 11, 13

*DeMeo v. Kean*,
    754 F. Supp. 2d 435 (N.D.N.Y. 2010) .................................................................................. 12, 13

*Donato v. Fitzgibbons*,
    172 F.R.D. 75 (S.D.N.Y. 1997) .................................................................................................. 13

*Essenter v. Cumberland Farms, Inc.*,
    No. 1:09-CV-0539 (LEK) (DRH), 2011 WL 124505 (N.D.N.Y. Jan. 14, 2011) ...................... 11

*Field Day, LLC v. County of Suffolk*,
    No. CIV.A. 04-2202, 2010 WL 1286622 (E.D.N.Y. Mar. 25, 2010) .......................................... 9

*Fujitsu Ltd. v. Federal Express Corp.*,
    247 F.3d 423 (2d Cir. 2001) .......................................................................................................... 7

*Great N. Ins. Co. v. Power Cooling, Inc.*,
    No. 06-CV-874 (ERK)(KAM), 2007 WL 2687666 (E.D.N.Y. Sept. 10, 2007) ........................ 12

*Houlihan v. Marriott Int'l, Inc.*,
    No. 00 CIV. 7439 (RCC), 2003 WL 22271206 (S.D.N.Y. Sept. 30, 2003) ................................ 9

*In re WRT Energy Sec. Litig.*,
    246 F.R.D. 185 (S.D.N.Y. 2007) ................................................................................................ 12

*Liberman v. FedEx Ground Package Sys., Inc.*,
    No. 09 CV 2423 (RML), 2011 WL 145474 (E.D.N.Y. Jan. 18, 2011) ...................................... 12

*M & T Mortg. Corp. v. Miller*,
  No. CV2002-5410(NG)(MDG), 2007 WL 2403565 (E.D.N.Y. Aug. 17, 2007) ...................... 13

*Nation–Wide Check Corp. v. Forest Hill Distributors, Inc.*,
  692 F.2d 214 (1st Cir. 1982) .............................................................................................. 12

*Pastorello v. City of New York*,
  No. 95 CIV. 470(CSH), 2003 WL 1740606 (S.D.N.Y. Apr. 1, 2003) ................................. 9, 13

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec. ("Pension Comm.")*
  685 F. Supp. 2d 456 (S.D.N.Y. 2010) .......................................................................... 7, 10, 11

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
  306 F.3d 99 (2d Cir. 2002) .................................................................................................. 10

*Richard Green (Fine Paintings) v. McClendon*,
  262 F.R.D. 284 (S.D.N.Y. 2009) ............................................................................... 10, 13, 14

*Schwarz v. FedEx Kinko's Office*,
  No. 08 CIV. 6486 (THK), 2009 WL 3459217 (S.D.N.Y. Oct. 27, 2009) ................................ 7

*Turner v. Hudson Transit Lines, Inc.*,
  142 F.R.D. 68 (S.D.N.Y. 1991) ..................................................................................... 7, 12, 13

*West v. Goodyear Tire & Rubber Co.*,
  167 F.3d 776 (2d Cir. 1999) ................................................................................................ 13

*Zubulake v. UBS Warburg LLC*,
  220 F.R.D. 212 (S.D.N.Y. 2003) ............................................................................................ 7

*Zubulake v. UBS Warburg LLC*,
  229 F.R.D. 422 (S.D.N.Y. 2004) ............................................................................................ 7

**FEDERAL RULES:**

F.R.C.P. Rule 26(a) .................................................................................................................. 5

## PRELIMINARY STATEMENT

It is well-established that parties have an obligation to preserve relevant evidence when litigation is reasonably anticipated. Here, defendants viewed a videotape of a serious beating of an 18-year-old detainee in their custody. Defendants began an internal investigation. Defendants even received both a letter from The Legal Aid Society and a Notice of Claim placing them on notice of their duty to preserve the videotape. Yet Defendants destroyed that video recording months later. There is no possible excuse for such egregious spoliation, and sanctions are appropriate.

This action concerns the June 26, 2010 brutal assault of teenager Plaintiff Kadeem John by another inmate while Mr. John was in the custody of the New York City Department of Correction ("DOC"), pursuant to a well-known, ongoing practice ("the Program"), sanctioned by Defendants, in which correction officers at adolescent jails, including the Robert N. Davoren Complex ("RNDC"), engage inmates or allow them to assault other inmates as a way to control and discipline those held in custody. Mr. John suffered a brain hemorrhage and internal bleeding from damage to his spleen and kidneys from this brutal assault ("the beating").

On June 26, 2010, a video recording of the beating was contemporaneously made and digitally stored due to wall-mounted cameras that were installed in the jail as a result of prior litigation against DOC. DOC's own documents reflect that the video was reviewed several days later by City employees. The results of that video review were sent to DOC supervisors, including Defendant Warden Emmanuel Bailey. About two weeks after the beating, the Legal Aid Society informed a DOC Deputy Commissioner about the incident, in writing, and requested an investigation. The Deputy Commissioner responded that DOC would appropriately investigate. A Notice of Claim was then filed one week later. But remarkably, Defendants destroyed the video recording a month *after* the letter was received, *after* the Notice of Claim

1

was filed, and *after* DOC supervisors were informed of the beating and the severe brain injuries that Mr. John suffered as a result. More than a year later, the same Deputy Commissioner who received the Legal Aid Society letter informed Plaintiff's counsel that "No video recordings regarding this incident have been preserved."

By failing to preserve these recordings, Defendants have violated a basic duty, and deprived Plaintiff of highly relevant, important evidence for the prosecution of his case. Accordingly, sanctions of a spoliation inference, along with the fees associated with this motion, should be granted.

## FACTS

*The Underlying Incident*

For years, the DOC has known that RNDC, its principal adolescent jail on Rikers Island, has been host to a pattern of gang domination and intimidation called "the Program," in which "correction officers 'would cede responsibility for maintaining order to inmates known as 'the Team' whom they personally selected." Compl. ¶¶ 28, 44-60. According to the Bronx District Attorney, as part of "the Program," correction officers conceal evidence of inmate on inmate assaults by "failing to intervene or stop the inmate assaults, making false reports about the assaults or directing inmate victims to make false reports regarding the assaults or acts of extortion, and by using violence or the threat of violence to ensure the victims' continued participation in the Program.'" Bronx District Attorney, Press Release, The Death of an 18-Year-Old Inmate on Rikers Island Last October Leads to Numerous Criminal Charges against Three Correction Officers and Twelve Teenage Inmates, Jan. 22, 2009, available at http://bronxda.nyc.gov/information/2009/case3.htm; *see also* Compl. ¶ 27. The Program has led to several cases in this court, *id.* at ¶¶ 31-34, criminal indictments and convictions, *id.* at ¶¶ 21-27, hearings before the City Council, *id.* at ¶ 36, and significant media coverage, *id.* at ¶ 43.

2

From the time he arrived at RNDC on or around June 14, 2010, Plaintiff Kadeem John, then aged 18, was himself victimized by these inmate enforcers pursuant to the Program. His housing unit, 2 Lower North ("2LN"), was effectively run by an inmate enforcer by the name of "Banks," believed to be a member of "the Bloods," who controlled the service of meals, access to telephones, and seating arrangements in the 2LN dayroom. Compl. ¶ 46. After a series of incidents in which Mr. John refused to join in this gang activity, Mr. John was told by another inmate "that Banks had told this new inmate to 'kick Kadeem out of the crib' and that Mr. John was about to 'get killed,' meaning beaten." Compl. ¶¶ 51-56, 57.

On June 26, 2010, while a group of inmates was lined up and returning to 2LN from the gym, the new inmate asked the inmate behind Mr. John to switch places with him. *Id.* at ¶¶ 59-60.

> "This inmate then stepped on the back of Mr. John's sneaker in order to provoke a fight. The group walked down the main corridor, then turned into a stairwell leading to 2LN. At that moment, in the presence of the escorting officers, Mr. John was hit in his temple from behind, then struck in the face and lower back. Approximately four other inmates besides his initial assailant then joined in the beating, while another inmate was being beaten concurrently in the same stairwell. No correction officer intervened to protect Mr. John. Mr. John eventually fell to the floor of the landing and lost consciousness."

Compl. ¶ 60.

Once Mr. John recovered consciousness, he was eventually taken to the hospital, where he was diagnosed with serious brain and kidney injuries. Compl. ¶ 63. He spent several nights in the hospital for treatment of these injuries, and continues to suffer neurological and gastrointestinal injuries. Compl. ¶¶ 63-65.

*The Request for Investigation*

On July 12, 2010, the Legal Aid Society, now Plaintiff's counsel in this matter, sent a detailed letter to Florence Finkle, Esq., DOC Deputy Commissioner, with a copy to Lewis Finkelman, Esq., DOC General Counsel. *See* Ex. 1.[1] This letter laid out the facts surrounding the beating of Mr. John and requested that DOC "confirm[] . . . that the Department will take steps to properly investigate Mr. John's allegation, and let[] [Legal Aid] know the results of the investigation." *Id.*

In a response letter to Legal Aid, dated July 23, 2010, copied to DOC General Counsel Mr. Finkelman, Ms. Finkle confirmed receipt of Legal Aid's letter. Ex. 2. In that letter, Ms. Finkle promised, "The department takes seriously its responsibility to house inmates safely and securely and we will take action to ensure that Mr. John's allegations are appropriately investigated." *Id.*

Five days later, on July 28, 2010, Plaintiff filed a Notice of Claim against the City of New York, pursuant to the requirements of the General Municipal Law § 50-e, which described the beating. Ex. 3.

After receiving no update about the status of the investigation, on July 11, 2011, before this action was commenced, Jonathan Chasan, Plaintiff's counsel, e-mailed Ms. Finkle following up on the prior e-mail, and asking her:

> Can you let me know if the Department has, in fact, any video recordings of the incident or the events which followed, and whether the Department conducted an investigation into the incident, and if the investigation has been concluded?

Ex. 4. Ms. Finkle responded by e-mail on July 25, 2011:

---

[1] All exhibits are attached to the accompanying declaration of Adam R. Pulver, dated February 7, 2012.

4

> The department's investigation of the June 26, 2010 inmate assault involving John Kadeem is still open.
>
> No video recordings regarding this incident have been preserved.

Ex. 5.

***Revelations of Investigation and Spoliation***

After several months of delay, Defendants produced a "Supplemental Disclosure Pursuant to F.R.C.P. Rule 26(a)" on February 1, 2012, enclosing basic documents relating to the investigation of the June 26 incident. These disclosures reveal that there was a video recording of the incident, that the video recording was reviewed by DOC employees in the days following the incident, and that the video recording was destroyed in August 2010 after Legal Aid's letter requesting DOC investigation was sent and after Mr. John filed his Notice of Claim.

There is no record that Ms. Finkle ever took "action to ensure that Mr. John's allegations [were] appropriately investigated," Ex. 2, in July 2010. According to DOC's own records, the June 26 incident was not actually investigated until Ms. Finkle requested an investigation in July *2011*, presumably in response to Mr. Chasan's e-mail. Ex. 6 at NYC 15, 17. In an Unusual Incident Report dated September 14, 2011, Assistant Deputy Warden Miguel Melendez explained that an investigation should have been commenced within 72 hours. *Id.* at NYC 16 ("if it had been investigated in the 72 hrs as instructed in the injury report directive inmate Kadeem's serious injury would have been revealed and called in a timely fashion not thirteen (13) months later.").

Some initial steps of an investigation did occur, though. The unit was locked down as a result of the incident, and several officers escorted Mr. John to the hospital via ambulance. Ex. 6 at NYC 16; Ex. 7 at NYC 21. On June 29, 2010, Assistant Deputy Warden Marvin Butler reviewed a "Facility Omni Cast Video" of the incident, via which he identified an

5

inmate, Gerald Gayle, as the assailant. Ex. 6 at NYC 16, 17; Ex. 7 at NYC 21, 22; Ex. 8. Assistant Deputy Warden Butler's review does *not* document a number of important issues, including details about the beating, the presence or absence of other inmates, the presence or absence of DOC staff, the time or length of relevant events, and other key facts. Assistant Deputy Warden Butler wrote a memorandum to Defendant Bailey that same day, indicating he had reviewed a video of the incident, interviewed Mr. John's assailant, and that the assailant would be disciplined. Exs. 9, 10. The infracting officer, whose name is illegible, interviewed Gayle and relied upon "video surveillance" in making his findings on July 3, 2010. Ex. 8.

There is no explanation in the record why neither Legal Aid's letter to the Deputy Commissioner in charge of investigations nor the Notice of Claim did not initiate further investigation of the incident by the jail facility or DOC's Investigation Division, as its own regulations require, or the preservation of evidence, nor why the limited investigation that *did* occur did not lead to any preservation of the critical video recording. In a report dated September 14, 2011, Assistant Deputy Warden Melendez explained that the video was only retained for sixty days, and "there is no DVD recording of the assault nor was one requested." Ex. 6 at NYC 16.

## ARGUMENT

Plaintiff seeks sanctions in the form of an adverse inference, preclusion of evidence and testimony, and costs and fees associated with this motion for Defendants' destruction and/or failure to preserve the video recording of the incident.[2] "A party seeking an

---

[2] At this point, it is unclear if other documents, such as interview notes generated during Defendants' "investigation," existed and were destroyed. Plaintiff's document requests have not yielded *any* material other than 59 pages of Rule 26 disclosures. Should discovery reveal other documents have been destroyed by Defendants and/or their agents, Plaintiffs will seek appropriate sanctions.

adverse inference instruction (or other sanctions) based on the spoliation of evidence must establish the following three elements: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind' and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004) (citing *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001)). Each of these three elements is plainly met here.

## I. DEFENDANTS HAD A DUTY TO PRESERVE THE VIDEO RECORDINGS SINCE, AT THE LATEST, JULY 12, 2010

"It is well established that the duty to preserve evidence arises when a party reasonably anticipates litigation." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.* ("*Pension Comm.*"), 685 F. Supp. 2d 456, 466 (S.D.N.Y. 2010); *see also Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003). This obligation may arise well before the filing of a complaint where a party is on notice that litigation is likely to be commenced. *See, e.g., Zubulake*, 220 F.R.D. at 217; *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 73 (S.D.N.Y. 1991) (citations omitted).

The Legal Aid letter of July 12, 2010, sent to two attorneys at DOC, sufficiently placed Defendants on notice that they should have reasonably anticipated litigation. The mere fact that Mr. John had consulted with the Legal Aid Society about the very incident captured on the video was enough to place the City on notice of its duty to preserve, regardless of whether that duty was specifically raised in the letter. *See, e.g., Schwarz v. FedEx Kinko's Office*, No. 08 CIV. 6486 (THK), 2009 WL 3459217, at *6 (S.D.N.Y. Oct. 27, 2009) (letter of representation

7

sent to Defendants sufficient to impose duty of preservation "[a]lthough the letter made no demands for the preservation"). While a communication from any attorney would have placed Defendants on notice, a letter from the Legal Aid Society should have particularly caused Defendants to anticipate litigation, as the Legal Aid Society had, as of July 2010, previously brought dozens of lawsuits against the City and DOC officials in this court arising out of brutality against on Rikers Island.[3]

The July 12, 2010 Legal Aid letter to DOC stated that "Mr. John alleges that correction officers consciously disregarded a substantial risk of inmate safety, and thus failed to reasonably protect him from an unprovoked attack by hostile inmates that left Mr. John with serious injuries." Any reasonable attorney, such as those who received this letter, would have anticipated litigation from such language. DOC Deputy Commissioner Finkle's response letter, dated July 23, 2010, bolsters this conclusion, as she referred to the Legal Aid letter as including "allegations against New York City Department of Correction personnel," leading her to represent she would "take action to ensure that Mr. John's allegations are appropriately investigated." Ex. 2. The fact that the response letter was sent not only to a Legal Aid paralegal, but also to Plaintiff's attorney Mr. Chasan and DOC General Counsel Mr. Finkelman, further confirms that DOC reasonably anticipated legal action at that time.

---

[3] *See, e.g., Sheppard v. Phoenix,* No. 91 Civ. 4148 (RPP); *Belvett v. City of New York,* No. 09 Civ. 8090 (VM); *Williams v. City of New York,* No. 09 Civ. 5734 (JGK); *Lee v. City of New York,* No. 09 Civ. 3134 (SHS); *Pauling v. City of New York,* No. 09 Civ. 2617(HB); *Crown v. City of New York,* No. 09 Civ. 2614 (SAS); *Trail v. City of New York,* 09 Civ. 1574 (LTS); *Shuford v. City of New York,* No. 09 Civ. 945 (PKC); *Youngblood v. City of New York,* No. 08 Civ. 5982 (NRB)*Livermore v. City of New York,* No. 08 Civ. 4442 (NRB) *Ingles v. City of New York,* No. 01 Civ. 8279(DC); *Martinez v. Robinson,* No. 99 Civ. 11911 (DAB)(JCF); *Handberry v. Thompson,* No. 96 Civ. 6161(CBM); *Benjamin v. Schriro,* No. 75 Civ. 3073 (HB) (ongoing consent decree).

Any doubt as to whether litigation could be reasonably anticipated based on the Legal Aid letter is eliminated by the fact that five days *after* Ms. Finkle's response letter, Plaintiff filed a Notice of Claim. Ex. 3. Such a Notice indisputably placed Defendants on notice that litigation was likely, and imposed a duty to preserve the video recording. *See, e.g., Field Day, LLC v. County of Suffolk*, No. CIV.A. 04-2202, 2010 WL 1286622, at *4 (E.D.N.Y. Mar. 25, 2010) (finding notice of claim imposed duty to preserve evidence); *Pastorello v. City of New York*, No. 95 CIV. 470(CSH), 2003 WL 1740606 (S.D.N.Y. Apr. 1, 2003) (same)

Even if the letter had not been sent and the notice of claim not filed, the extremely serious nature of the beating, as reflected in internal memoranda and reports amongst City employees, including the Memorandum to Defendant Bailey, placed Defendants on notice that litigation could be anticipated. These documents reflect that an inmate was *severely* injured and that somehow no DOC official admitted to witnessing this attack in a public place. *See, e.g.*, Exs. 9-10. This case is thus similar to that of *Houlihan v. Marriott Int'l, Inc.*, No. 00 CIV. 7439 (RCC), 2003 WL 22271206 (S.D.N.Y. Sept. 30, 2003), where the court held that a mere occurrence of an accident in a hotel room, combined with the preparation of incident reports, imposed a duty to preserve, noting, "Where a hotel guest is injured in a hotel room, there is a strong likelihood that such injury will be the subject of future litigation." When an inmate is sent to the hospital with brain injuries sustained in the jail corridors, there is a similarly strong likelihood that litigation will ensue.

## II. DEFENDANTS WERE CULPABLE IN FAILING TO PRESERVE THE VIDEO RECORDING

As Assistant Deputy Warden Melendez indicated, because no one "requested" otherwise, the video recording of the incident was destroyed sixty days later. This destruction occurred on or around August 25, 2010 – more than a month after Legal Aid's letter to Deputy

Commissioner Finkle and Mr. Finkelman and Commissioner Finkle's July 23, 2010 response letter, more than two months after Assistant Deputy Warden Butler reviewed the video, nearly a month after Plaintiff filed his Notice of Claim, and well after Defendant Bailey and other City officials were put on notice of the beating and the likelihood of litigation by the various internal reports.

"In this circuit, a 'culpable state of mind' for purposes of a spoliation inference includes ordinary negligence." *Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. 284, 290 (S.D.N.Y. 2009). Here, it appears multiple actors acted negligently by failing to ensure the video recording was preserved. As Assistant Deputy Warden Melendez noted, despite a directive to commence a higher-level investigation within 72 hours, no such investigation was commenced for over a year. Neither Ms. Finkle nor Mr. Finkelman appear to have effectively conveyed the obligation of preservation to DOC employees in response to the Legal Aid letter. Defendant Bailey and his subordinates who knew about the seriousness of the beating, and that a tape existed and had been reviewed, did not act to ensure the preservation of the recording. This is negligence, at best.

## III. THE VIDEO RECORDING WAS PLAINLY RELEVANT

Given the multitude of failures by Defendants, Plaintiff contends the spoliation here was not only negligent, but grossly negligent, and thus relevance and prejudice are presumed. *See, e.g., Pension Comm.*, 685 F. Supp.2d at 467 (citing *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 109 (2d Cir. 2002)). Even if Defendants were merely "ordinarily negligent," though, the relevance and prejudice is obvious in this case.

This case concerns injuries Plaintiff suffered from the beating, which he alleges was a direct result of Defendants' deliberate indifference and a policy and practice of allowing inmates to effectively run daily life at RNDC and enforce their rule by beatings. A video

10

recording of the incident that Plaintiff alleges Defendants had a duty to prevent is relevant. Not only could it have demonstrated the cause and extent of Plaintiff's injuries, but it could also have depicted whether DOC staff were in fact present during the beating and failed to intervene to stop it. Or, if it is true that no staff were present during a time when inmates typically should be under strict supervision, the recording could perhaps explain how or why inmates were out of view of DOC officers for long enough for Plaintiff to have been so severely beaten. The Court may also easily conclude that the video was relevant to the litigation incident (Mr. John's beating), since *Defendants* reviewed the video as part of their cursory investigation, although denied Mr. John the same opportunity by destroying it. "[It] is clear that a video showing the time before, during, and after an incident is relevant to determine what actually happened at the moment the injury occurred." *Essenter v. Cumberland Farms, Inc.*, No. 1:09-CV-0539 (LEK) (DRH), 2011 WL 124505 (N.D.N.Y. Jan. 14, 2011). Without the video recording, "the only contemporaneous evidence of what" occurred is lost, and Plaintiff is prejudiced as a result. *See Casale v. Kelly*, 710 F. Supp. 2d 347, 366 (S.D.N.Y. 2010)

## IV. AN ADVERSE INFERENCE, PRECLUSION, AND FEES ARE APPROPRIATE REMEDIES

Plaintiff requests the Court issue sanctions in the form of an adverse inference that the video would have corroborated Plaintiff's version of events, preclusion from offering evidence as to what the video purportedly showed, and the fees incurred in association with the filing of this motion.

### A. The Court Should Grant an Adverse Inference

In the range of sanctions for spoliation, an adverse inference is relatively modest. *See, e.g., Pension Comm.*, 685 F. Supp. 2d at 469 ("The choices include—from least harsh to most harsh—further discovery, cost-shifting, fines, special jury instructions, preclusion, and the

entry of default judgment or dismissal (terminating sanctions)"). As one court in this district has explained:

> The concept of an adverse inference as a sanction for spoliation is based on two rationales. The first is remedial: where evidence is destroyed, the court should restore the prejudiced party to the same position with respect to its ability to prove its case that it would have held if there had been no spoliation. The second rationale is punitive. "Allowing the trier of fact to draw the inference presumably deters parties from destroying relevant evidence before it can be introduced at trial."

*Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 74 (S.D.N.Y. 1991) (quoting *Nation–Wide Check Corp. v. Forest Hill Distributors, Inc.*, 692 F.2d 214, 218 (1st Cir. 1982)); *see also Liberman v. FedEx Ground Package Sys., Inc.*, No. 09 CV 2423 (RML), 2011 WL 145474, at *5 (E.D.N.Y. Jan. 18, 2011).

Both rationales apply here. Since neither Plaintiff nor the Court can ever know what the video recording actually showed, an adverse inference is the only way to cure the prejudice to Plaintiff. *See, e.g., DeMeo v. Kean*, 754 F. Supp.2d 435, 448-49 (N.D.N.Y. 2010).

### B.  The Court Should Preclude Evidence Relating to the Video Recording and Its Review

Preclusion is a particularly appropriate remedy for spoliation where "it can be tailored to mitigate the specific prejudice that the [non-spoliating party] would otherwise suffer." *In re WRT Energy Sec. Litig.*, 246 F.R.D. 185, 200 (S.D.N.Y. 2007). The preclusion sought here is very narrowly tailored: a bar on Defendants introducing evidence or testimony relating to the spoliated evidence – the video recording – or any Defendants' or their employees' review thereof. Parties are frequently precluded from offering evidence or testimony regarding spoliated evidence, as such a sanction "best serve[s] the trifold aims of a spoliation sanction." *Great N. Ins. Co. v. Power Cooling, Inc.*, No. 06-CV-874 (ERK)(KAM), 2007 WL 2687666, at *14 (E.D.N.Y. Sept. 10, 2007); *see also West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776,

780 (2d Cir. 1999) (suggesting preclusion of evidence regarding spoliated evidence was appropriate remedy); *M & T Mortg. Corp. v. Miller*, No. CV2002-5410(NG)(MDG), 2007 WL 2403565, at *12 (E.D.N.Y. Aug. 17, 2007) (precluding evidence or testimony about spoliated evidence); *Donato v. Fitzgibbons*, 172 F.R.D. 75, 84 (S.D.N.Y. 1997) (same).

Here, Plaintiff would be greatly prejudiced by any evidence or testimony relating to a review of the video recording. The only individuals who have had the opportunity to view the recording were employed by Defendants. Should these individuals testify, a juror is likely to be greatly influenced by such testimony. Plaintiff cannot effectively cross-examine these witnesses as to what they reviewed, though, nor can he offer any competing witnesses to comment on what the tape showed. *Compare with DeMeo*, 754 F. Supp.2d at 450 (denying request for preclusion where plaintiff's investigator had viewed the video destroyed by defendant and could testify about it). To allow one-sided testimony about a recording that Defendants destroyed before Plaintiff could review it would be unfairly prejudicial. *See Aiello v. Kroger Co.*, 2:08-CV-01729-HDM, 2010 WL 3522259, at *3 (D. Nev. Sept. 1, 2010) (precluding testimony about a destroyed surveillance video, as plaintiff "was never given the opportunity to inspect the video and any testimony from the spoliating party regarding the content of the video would be unreliable and unfairly prejudicial").

### C.  Attorneys' Fees are Appropriately Awarded

Where a court finds spoliation, reimbursement for the fees incurred in making the motion are commonly awarded. *See, e.g., Casale*, 710 F. Supp.2d at 367; *Richard Green (Fine Paintings)*, 262 F.R.D. at 292; *Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 444 (S.D.N.Y. 2009); *Pastorello v. City of New York*, No. 95 CIV. 470(CSH), 2003 WL 1740606 (S.D.N.Y. Apr. 1, 2003) *Turner*, 142 F.R.D. at 78. "[S]uch an award serves the remedial

13

purpose of compensating the plaintiff for the reasonable costs it incurred in bringing this motion." *Richard Green (Fine Paintings)*, 262 F.R.D. at 292.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court grant Plaintiff an adverse inference that the video recording would have corroborated his testimony, award attorneys' fees related to this motion, and any further relief deemed appropriate and proper.

Dated: February 7, 2012
      New York, New York

                                      EMERY CELLI BRINCKERHOFF & ABADY LLP

                                      */s/ Adam R. Pulver*
                                      Adam R. Pulver
                                      Katherine Rosenfeld
                                      Jonathan S. Abady

                                      75 Rockefeller Plaza, 20th Floor
                                      New York, New York 10019
                                      (212) 763-5000

                                      -and-

                                      THE LEGAL AID SOCIETY

                                      Jonathan S. Chasan
                                      Mary Lynne Werlwas
                                      199 Water Street, 6th Floor
                                      New York, New York 10038
                                      (212) 577-3530

                                      *Attorneys for Plaintiff*