UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KADEEM JOHN,

            Plaintiff,

-against-

CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CORRECTION ("DOC")
SUPERVISING WARDEN ARTHUR OLIVARI;
CHIEF OF DEPARTMENT LARRY W. DAVIS,
SR.; WARDEN EMMANUEL BAILEY;
DEPUTY WARDEN WALTER NIN;
CORRECTION OFFICER "DJ" DOE; and
CORRECTION OFFICER JOHN DOES #1-#5,

            Defendants.

No. 11 Civ. 5610 (RPP)

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION

Emery Celli Brinckerhoff & Abady LLP
75 Rockefeller Plaza, 20th Floor
New York, New York 10019
(212) 763-5000

# TABLE OF CONTENTS

**PAGE NO(s):**

TABLE OF AUTHORITIES ................................................................................................. ii-iii

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................... 2

    I.    Defendants' Duty to Preserve Accrued Without Any Request for Preservation or Specific Threat of Litigation ............................................................................................ 3

    II.    Defendants' Gross Negligence is Sufficient to Meet the Requisite Culpability Standard ............................................................................................................................ 5

    III.    The Destruction of the Only Contemporaneous Recording of an Incident is *De Facto* Prejudicial ............................................................................................................... 6

    IV.    The Relief Requested is Appropriate ............................................................................. 9

CONCLUSION ........................................................................................................................... 10

## TABLE OF AUTHORITIES

**PAGE NO(s):**

**FEDERAL CASES:**

*Byrnie v. Town of Cromwell, Bd. of Educ.*,
  243 F.3d 93 (2d Cir. 2001) ...................................................................................................2

*Everhome Mortgage Co. v. CharterOak Fire Ins. Co.*,
  No. 07-CV-98(RRM), 2011 WL 4055741 (E.D.N.Y. Sept. 12, 2011) ..........................10

*Field Day, LLC v. County of Suffolk*,
  No. CIV.A. 04-2202, 2010 WL 1286622 (E.D.N.Y. Mar. 25, 2010)...........................5

*Gesualdi v. Metro Found. Contractors Inc.*,
  No. 09 CV 2058 JG RML, 2011 WL 4543888 (E.D.N.Y. Sept. 29, 2011)..................10

*Kounelis v. Sherrer*,
  529 F. Supp. 2d 503 (D.N.J. 2008).........................................................................8

*Kronisch Residential Funding Corp. v. DeGeorge Fin. Corp.*,
  306 F.3d 99 (2d Cir. 2002) ....................................................................................7

*Orbit One Communications, Inc. v. Numerex Corp.*,
  271 F.R.D. 429 (S.D.N.Y. 2010) .........................................................................5-6

*Pastorello v. City of New York*,
  No. 95 CIV. 470(CSH), 2003 WL 1740606 (S.D.N.Y. Apr. 1, 2003) .........................5

*Pension Comm. of Univ. of Monteal Pension Plan v. Banc of Am. Sec.*,
  685 F. Supp. 2d 456 (S.D.N.Y. 2010) ....................................................................3

*Peschel v. City Of Missoula*,
  664 F. Supp. 2d 1137 (D. Mont. 2009)...............................................................7, 9

*Rattray v. Woodbury County, Iowa*,
  761 F. Supp. 2d 836 (N.D. Iowa 2010) .................................................................7

*Residential Funding v. DeGeorge Fin. Corp.*,
  306 F.3d 99 (2d Cir. 2002) ....................................................................................5

*Richard Green (Fine Paintings) v. McClendon*,
  262 F.R.D. 284 (S.D.N.Y. 2009).............................................................................5

*Schwarz v. FedEx Kinko's Office*,
  No. 08 CIV. 6486 (THK), 2009 WL 3459217 (S.D.N.Y. Oct. 27, 2009) ..................3, 4

*Stevenson v. Union Pac. Ry. Co.*,
  354 F.3d 739 (8th Cir. 2004) ..................................................................................................7

*Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of the Lao People's Democratic Republic*,
  No. 10 CIV. 5256 KMW, 2011 WL 4111504 (S.D.N.Y. Sept. 13, 2011) ...............................10

*Woodard v. Wal-Mart Stores E., LP*,
  801 F. Supp. 2d 1363 (M.D. Ga. 2011) ..................................................................................8

*Zubulake v. UBS Warburg LLC ("Zubulake I")*,
  220 F.R.D. 212 (S.D.N.Y. 2003) .........................................................................................3, 6

*Zubulake v. UBS Warburg LLC ("Zubulake II")*,
  229 F.R.D. 422 (S.D.N.Y. 2004) ............................................................................................2

## PRELIMINARY STATEMENT

The facts relevant to this motion are not in dispute. Plaintiff Kadeem John was subject to a violent assault by other inmates at Rikers Island, resulting in serious brain and kidney injuries ("the assault"). The assault was recorded on video. As part of its investigation of the assault, a Department of Correction ("DOC") employee reviewed this video within days of the assault, and this review was communicated to several other DOC employees, including multiple Defendants. Plaintiff alleges that the assault was a direct result of a well-known, ongoing practice ("the Program"), sanctioned by Defendants, in which correction officers at adolescent jails, including the Robert N. Davoren Complex ("RNDC"), encourage or allow inmates to assault other inmates, as a way to control and discipline those held in custody.

Within weeks of the assault, the Legal Aid Society sent DOC officials a letter requesting investigation of the incident. Within weeks of the assault, Plaintiff filed a Notice of Claim with the City of New York, indicating a claim for damages against the City as a result of the incident. DOC officials agreed that they would investigate the assault.

And then Defendants destroyed the recording.

Defendants' opposition, citing a total of three cases, makes a variety of frivolous arguments, completely unconnected to the well-developed case law on spoliation, as to why they should escape sanctions for their destruction of key evidence. Defendants advance a novel theory that the duty to preserve evidence only accrues if a plaintiff specifically informs them that "litigation" is likely, or, similarly novel, that the *plaintiff* has a duty to affirmatively request the preservation of relevant evidence. This is not the law. A duty to preserve can exist without *any* communication from a plaintiff. Where, as in this case, a letter from counsel about an assault and a notice of claim – a notice of a legal claim against Defendant the City of New York – are also sent to a defendant, a duty to preserve indisputably exists.

1

Defendants also argue that Plaintiff's failure to explicitly request preservation of the recording means that they lack the requisite culpability in destroying the evidence. Again, this is not the law. This Circuit makes clear that the culpability requirement is met by a showing of plain negligence – which is more than present here.

Finally, Defendants contend that the destruction of the video recording is not prejudicial, because Defendants' own entirely self-interested employees have said it would exonerate them, and because years later, Plaintiff can depose people about what happened. These frivolous arguments ignore the importance of a contemporaneous video recording of an incident.

None of Defendants' arguments dispute the basic facts: a video recording of an assault was destroyed after Defendants were on actual notice of likely litigation surrounding that assault. This is textbook spoliation. The Court should grant Plaintiff the relief requested: an adverse inference that the video recording would have corroborated his testimony, preclusion of evidence or testimony relating to the video recording or any Defendants' or their employees' review thereof, and attorneys' fees incurred in connection with this motion.

**ARGUMENT**

A party seeking sanctions for spoliation must show three elements: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind' and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004) ("*Zubulake II*") (citing *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001)). All three elements are present here, as supported by relevant and binding case law.

## I. DEFENDANTS' DUTY TO PRESERVE ACCRUED WITHOUT ANY REQUEST FOR PRESERVATION OR SPECIFIC THREAT OF LITIGATION

The parties agree that "the duty to preserve evidence arises when a party reasonably anticipates litigation." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 466 (S.D.N.Y. 2010). Plaintiff contends that any one of four undisputed facts show Defendants were on notice of litigation before they destroyed the video: (1) a July 12, 2010 letter from the Legal Aid Society sent to two DOC attorneys ("the Legal Aid letter") (Ex.[1] 1); (2) a July 23, 2010 letter from a DOC official sent to the Legal Aid Society confirming receipt of the Legal Aid letter and promising an investigation (Ex. 2); (3) a Notice of Claim filed by Plaintiff with the City of New York on July 28, 2010 (Ex. 3); and (4) the mere circumstances of the assault as recorded in Defendants' own internal reports.

Defendants, without citing any case law, contend that none of these circumstances were sufficient to place Defendants on notice of litigation, as Plaintiff never specifically requested the preservation of evidence nor did he use the magic word "litigation." Opp'n at 3. There is no legal support for the proposition that the duty to preserve is contingent on a specific preservation request. The test is not whether a party is on notice of a duty to preserve, but rather whether it is on notice that litigation is likely. Accordingly, courts have repeatedly found duties to preserve exist without any explicit request. In one such case, cited by Plaintiff in his moving brief, the Court explicitly found that a letter of representation sent by a plaintiff to a defendant gave the defendant "good reason to anticipate imminent litigation" about an accident involving a mat, even though "the letter made no demands for the preservation of the mat." *Schwarz v. FedEx Kinko's Office*, No. 08 CIV. 6486 (THK), 2009 WL 3459217, at *6 (S.D.N.Y. Oct. 27, 2009). *See also Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003)

---

[1] All exhibits are attached to the Declaration of Adam R. Pulver, dated February 7, 2012, filed in connection with Plaintiff's moving papers, Doc. # 18.

3

("*Zubulake I*") (duty to preserve accrued prior to any communication from plaintiff). The rationale for this rule is clear- a plaintiff can rarely know prior to litigation what specific evidence exists in a defendant's possession. Thus the law does not require that a plaintiff request that evidence be preserved, only that a defendant reasonably anticipate suit about the incident.

Defendants' suggestions that an attorney's request for an investigation cannot place a party on notice of the likelihood of litigation if it does not explicitly threaten litigation, Opp'n at 4, is entirely unsupported by case law. In *Schwarz*, for example, the letter merely indicated a party had retained counsel. 2009 WL 3459217 at *6. The Legal Aid letter informing Defendants of a serious assault and a relationship between attorneys and Plaintiff regarding the assault, and requesting an investigation (which in DOC, *necessarily* includes review of any existing videotape), should have placed – and did place – Defendants on equal, if not greater, notice than the defendant in *Schwarz*.

Defendants also claim they had no reason to believe litigation was likely because (1) lots of inmates are brutally assaulted at Rikers Island and (2) there was no indication that a DOC employee was directly involved in the assault on Mr. John. Opp'n at 4-5. With respect to the first argument, Defendants cannot seriously contend that the fact that the abuse of inmates is so rife in the DOC somehow excused them from their duties to preserve evidence. As to the second, Defendants' position appears to be that the duty to preserve arises only when a party decides that a potential claim against it would be meritorious, and thus Defendants had no duty to preserve because they believe the notice of claim did "not give rise to a meritorious claim." Opp'n at 4. Again, there is no legal support for such a theory. Here, a notice of claim was filed against the City of New York – clearly indicating that Plaintiff intended to hold the City and/or its employees liable for their culpability in the assault (which is the crux of the spate of litigation

4

and publicity surrounding "the Program" – that is, that inmate-inmate assaults are sanctioned by DOC) and that litigation was likely. That is what a Notice of Claim is, and Defendants are well aware of this. Unsurprisingly, courts have thus repeatedly suggested that a notice of claim *de facto* imposes a duty to preserve. *See, e.g.*, *Field Day, LLC v. County of Suffolk*, No. CIV.A. 04-2202, 2010 WL 1286622 (E.D.N.Y. Mar. 25, 2010); *Pastorello v. City of New York*, No. 95 CIV. 470(CSH), 2003 WL 1740606 (S.D.N.Y. Apr. 1, 2003).

Defendants had ample reason to believe litigation was likely, and thus had a duty to preserve the video when they destroyed it– more than a month after Legal Aid's letter, and Commissioner Finkle's July 23, 2010 response stating an investigation was underway, more than two months after Assistant Deputy Warden Butler reviewed the video, nearly a month after Plaintiff filed his Notice of Claim, and well after Defendant Bailey and other City officials were put on notice of the beating and the likelihood of litigation by the various internal reports.

## II.  DEFENDANTS' GROSS NEGLIGENCE IS SUFFICIENT TO MEET THE REQUISITE CULPABILITY STANDARD

With respect to their culpability for the destruction of the evidence, Defendants repeat their arguments that the destruction of evidence was Plaintiff's fault, since he did not specifically request preservation or "mention the litigation in his letter," and because Defendants did not think any "meritorious" litigation was likely since DOC employees did not physically beat Plaintiff. Opp'n at 5-6. These arguments confuse the culpability and duty to preserve elements of a spoliation claim, but they are equally meritless.

The law is clear; "in this circuit, a 'culpable state of mind' for purposes of a spoliation inference includes ordinary negligence." *Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. 284, 290 (S.D.N.Y. 2009) (citing *Residential Funding v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002)); *see also Orbit One Communications, Inc. v. Numerex*

5

*Corp.*, 271 F.R.D. 429, 438 (S.D.N.Y. 2010). "Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent." *Zubulake I,* 220 F.R.D. at 220.

The duty to preserve existed here, and relevant evidence was destroyed, thus giving rise to a finding of negligence. But here, negligence need not be surmised, as it is clear that several DOC employees, including Defendant Bailey, were aware that a recording existed and was reviewed, and did not act to ensure the preservation of the recording. Ex. 6 at NYC16, 17; Ex. 7 at NYC 21, 22; Ex. 8; Ex. 9; Ex. 10. These employees also violated DOC's own directive to commence a higher-level investigation within 72 hours; had they not, the video recording would not have been destroyed. *See* Ex. 6 at NY 16. These failures to act demonstrate sufficient culpability.

### III. THE DESTRUCTION OF THE ONLY CONTEMPORANEOUS RECORDING OF AN INCIDENT IS *DE FACTO* PREJUDICIAL

There was a videotape of the beating of Kadeem John. Defendants' employees reviewed that tape. They documented their review, and claim it exculpates them from responsibility for the assault. Plaintiff did not review the videotape. The recording was destroyed. The ensuing prejudice is plain.

Yet, Defendants contend that Plaintiff has failed to prove that the destruction of the video recording of his assault is prejudicial because he has not "proferred any evidence" of what the video recording actually showed. Defendants would hold Plaintiff to an impossible standard of proof: describing what destroyed evidence actually showed, without ever having access to that evidence before its destruction. The Second Circuit has explicitly warned against such a standard, indicating:

> Courts must take care not to hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed or unavailable evidence, because doing so would subvert the

6

> purposes of the adverse inference, and would allow parties who
> have destroyed evidence to profit from that destruction.

*Kronisch Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 109 (2d Cir. 2002) (internal marks and citations omitted). For these reasons, one court has recently explained, "prejudice may arise, not just from an indication that the destroyed recording could be classified 'as a smoking-gun,' but from 'the very fact that it is the only recording of' the incident in question." *Rattray v. Woodbury County, Iowa*, 761 F. Supp. 2d 836, 846 (N.D. Iowa 2010) (quoting *Stevenson v. Union Pac. Ry. Co.*, 354 F.3d 739, 749 (8th Cir. 2004)).

Defendants suggest that any prejudice can be avoided by (1) other evidence, including medical records and depositions of eyewitnesses; and (2) reliance on Defendants' own employees' statements of what the video recording actually showed. Numerous courts have explained why such alternatives are insufficient. For example, in *Peschel v. City Of Missoula*, 664 F. Supp. 2d 1137, 1144 (D. Mont. 2009), an excessive force case, a district court rejected the argument that the plaintiff was "not prejudiced [by the destruction of a video recording] because eye witnesses to the arrest can testify as to what happened at the scene." The Court explained the importance of video evidence:

> The obvious inherent value of the video recording is that it would
> have allowed the jury, the arbiter of the facts, to see the actual
> events unfold and make its own collective assessment as to
> whether the force used . . . was or was not reasonable under the
> circumstances. The jury would not be forced to rely on the
> conclusions drawn by the various witnesses as to the
> reasonableness of the force used. Rather, the jury would have been
> able to form its own conclusions-unfiltered by the perceptions or
> sentiments of the various witnesses.

*Id.* at 1145.

Likewise, here, a jury – as well as Plaintiff's own experts – should have been able to view the recording and ascertain, for example, whether any DOC employees intervened, and if

7

not, whether their failure to do so was reasonable. Additionally, a video recording would be extremely important in testing the credibility of supposed witnesses "and the accuracy and consistency of their testimony." *Woodard v. Wal-Mart Stores E., LP*, 801 F. Supp. 2d 1363, 1373 (M.D. Ga. 2011). Testimony and medical records reconstructing the assault are simply inadequate substitutes; "the unbiased eye of a surveillance camera would lend a great deal of credibility to one 0side's version of the events." *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 519 (D.N.J. 2008).

Remarkably, Defendants take the position that it is *they* who are prejudiced by their own destruction of the tape since it showed that "correction officers did not have any involvement in [plaintiff's] assault." Opp'n at 7. This argument reflects exactly why the doctrine of spoliation exists. Since the videotape was destroyed, the only information about what that videotape showed is a brief statement in a report by an interested DOC employee. Defendants' suggestion that the Court accept that the tape supported Defendants' theory of the case – and indeed should allow them to "introduc[e] evidence of what was contained in the video recording," *id.* – is outrageous and, unsurprisingly, not supported by any case law. Even if the DOC employee who viewed the video recording was neutral and disinterested (rather than an employee of the Defendant), a deposition of him on the contents of the video would hardly be equivalent to the recording itself. "In the absence of the video itself, Plaintiff is left to draw out anything else the video might have showed through the testimony of an individual who may not have known the significance of what he was viewing, and who is being asked to recall the contents of that video three to four years after the fact." *Woodard*, 801 F. Supp. 2d at 1373.

The proposed substitutes are simply inadequate. The Defendants' claim of no prejudice here should similarly be rejected.

## IV.     THE RELIEF REQUESTED IS APPROPRIATE

Plaintiff requests three forms of relief: (1) an adverse inference that the video would have corroborated Plaintiff's version of event; (2) preclusion from offering evidence as to what the video purportedly showed, and (3) the fees incurred in association with the filing of this motion.

Defendants oppose an adverse inference and preclusion on the bases that there is no prejudice to Plaintiff and the request is premature. As noted above, the destruction of the video, and allowing Defendants to present evidence about what that video purportedly showed, is extremely prejudicial to Plaintiff. As to the issue of prematurity, it is clear that the recording was destroyed and there is no suggestion that it will resurface. The issue is thus ripe.

In the analogous *Peschel* case, the court eloquently explained why even a prohibition on officers testifying "as to what they saw in the video"[2] would not be enough to remedy the prejudice resulting from the destruction of that video:

> The City's proposed panacea, however, is illusory. The mischief in the proposal lies in the fact there would effectively be no sanction whatsoever for the City's spoliation of the best evidence of what occurred during the arrest of Peschel. The purported sanction would have absolutely no punitive, deterrent, or remedial value. It is cavalier to suggest otherwise. At worst, the Court would be effectively condoning the spoliation of the best evidence available to resolve the factual dispute with the greatest accuracy. The importance of video recordings to the fair, accurate, and expeditious resolution of disputes emanating from encounters between law enforcement and the public cannot be overstated. The Court would be remiss to simply ignore, as suggested by the City, the spoliation of the video recording.

664 F. Supp. 2d at 1145. Whereas in *Peschel*, the Court granted judgment on the issue of reasonable force against the spoliating party, here, much less severe relief is sought.

---

[2] The *Peschel* Defendants conceded that such a prohibition was obviously appropriate, unlike Defendants here.

9

Defendants oppose the request for fees on the basis that no "proper fee application . . . detail[ing] the time involved in making the motion and the billable rate" was submitted in connection with the motion. Opp'n at 8. This argument is senseless, as the fees sought include fees not yet incurred at the time of the motion, including time spent responding to Defendants' repeated extension requests, reviewing Defendants' opposition, drafting this Reply, and any argument on the Motion the Court may entertain. Obviously, in compliance with standard practice, should the Court deem a sanction of fees appropriate, we will promptly provide the appropriate affidavits itemizing fees and costs. *See, e.g., Gesualdi v. Metro Found. Contractors Inc.*, No. 09 CV 2058 JG RML, 2011 WL 4543888, at *1 (E.D.N.Y. Sept. 29, 2011); *Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of the Lao People's Democratic Republic,* No. 10 CIV. 5256 KMW, 2011 WL 4111504, at *11 (S.D.N.Y. Sept. 13, 2011); *Everhome Mortgage Co. v. Charter Oak Fire Ins. Co.*, No. 07-CV-98(RRM), 2011 WL 4055741, at *1 (E.D.N.Y. Sept. 12, 2011).

## CONCLUSION

For the foregoing reasons and those in Plaintiff's moving papers, Plaintiff respectfully requests the Court grant Plaintiff an adverse inference that the video recording would have corroborated his testimony, preclusion of evidence or testimony relating to the spoliated evidence – the video recording – or any Defendants' or their employees' review thereof, an award of attorneys' fees related to this motion, and any further relief deemed appropriate and proper.

Dated: March 2, 2012
      New York, New York

                              EMERY CELLI BRINCKERHOFF
                              & ABADY LLP

                              */s/ Adam R. Pulver*
                              Adam R. Pulver
                              Katherine Rosenfeld
                              Jonathan S. Abady

                              75 Rockefeller Plaza, 20th Floor
                              New York, New York 10019
                              (212) 763-5000

                              -and-

                              THE LEGAL AID SOCIETY

                              Jonathan S. Chasan
                              Mary Lynne Werlwas
                              199 Water Street, 6th Floor
                              New York, New York 10038
                              (212) 577-3530

                              *Attorneys for Plaintiff*