USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/9/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

KADEEM JOHN

                                 Plaintiff,                            11 CV 5610 (RPP)
                 - against -
                                                                       **OPINION AND ORDER**
CITY OF NEW YORK., et al.

                                 Defendants.
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

      Defendants in this matter have repeatedly failed to adhere to this Court's orders

mandating production of documents responsive to Plaintiff's document requests served on

Defendants in November of 2011.  Specifically, Defendants have failed to produce all documents

responsive to Document Requests Nos. 9, 21, 14 and 25.  Furthermore, Defendants have failed to

confirm that they produced all documents responsive to Document Requests Nos. 10, 14, 15, 18,

25, and 27.[1]  For the reasons stated herein, the Court will impose sanctions on Defendants for

repeatedly failing to comply with this Court's discovery orders.

**I.    Background**

    **A. The April 23, 2012 Conference**

      On August 12, 2011, Plaintiff, an inmate at the Robert N. Davoren Center ("RNDC") at

Rikers Island, filed a Complaint alleging that correction officers at RNDC failed to protect

Plaintiff as he was assaulted by other inmates on June 26, 2010, while in the custody of the New

---

[1] Document Requests Nos. 14, 15, 18, 21, 25, and 27 all concern documents that relate to inmate-on-inmate assaults at RNDC from June 26, 2007 to the present.  Document Request No. 9 seeks "the personnel files and institutional files of each of the 2LN Officers, including the pre-employment psychological screening tests and evaluations."  Document Request No. 10 seeks "the most recent DOC "22R forms" prepared for each of the 2LN Officers." (See Letter of Adam R. Pulver dated April 11, 2012 at 4-5.) The full language of the Document Requests at issue are attached to this Order as Appendix A.

1

York Department of Corrections ("DOC"). (Compl. ¶ 1, 59-62.) Plaintiff alleges that it was the practice of correction officers at RNDC to allow certain inmates to assault other inmates ("The Program") as a means to establish control and discipline at that correction facility. (Id. ¶ 1.) Plaintiff suffered serious brain and kidney injuries as a result of the alleged beating. (Id. ¶ 63.) Plaintiff brings his claims against the Defendant DOC staff members under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the Constitution.  Plaintiff brings his claim against the City of New York pursuant to Monell v. City of New York, 436 U.S. 658 (1978).

By letter dated February 9, 2012, Plaintiff's counsel informed the Court that Defendants were deficient in producing "First Stage" discovery requests served in November of 2011 and requested the Court's assistance.  On March 5, 2012, the Court ordered Defendants to produce all responsive documents that remained outstanding in the "First Stage" of Plaintiff's discovery requests by April 5, 2012. (Tr. of Mar. 5, 2012 Hr'g ("Tr. 3/5/12") at 20.)  In light of Plaintiff's counsel's correspondence with the Court dated April 11, 2012, detailing Defendants' unsatisfactory production of responsive documents, the Court ordered a hearing to be held on April 23, 2012. (Order dated April 18, 2012, ECF No. 16.)  Assistant  Corporation Counsel Diep Nguyen, and her supervisor, Division Chief Muriel Goode-Trufant, appeared on behalf of Defendants and informed the Court that they had begun producing Monell discovery pertaining to the "Program" and other inmate-on-inmate assaults, but would need three more weeks to complete that discovery. (Tr. of April 23, 2012 Hr'g ("Tr. 4/23/12") at 10.)  Additionally, Defendants objected on privacy grounds to Plaintiff's request for the disciplinary records, personnel files, and psychological screenings of all officers assigned to 2 Lower North at the Robert N. Davoren Complex ("RNDC") at Rikers Island. (Id. at 18.)  As it had in the previous

2

conferences, the Court found that any privacy concerns raised by the Defendants were unfounded in view of the existing Protective Order of Confidential Information, which restricted the documents to "attorney's eyes only." (Tr. 3/5/12 at 6; Tr. 4/23/12 at 18-21.)  Accordingly, the Court ordered Defendants to produce all outstanding responsive documents by May 21, 2012, (Id. at 21), noting as it had previously that it was important that Plaintiff be in possession of all responsive documents prior to the upcoming settlement conference before Magistrate Judge Maas scheduled for May 30, 2012, so that Plaintiff could make an informed presentation. (Id. at 2, 8, 14.)

### B. The May 2012 Correspondence

By letter dated May 22, 2012, Plaintiff's counsel informed the Court that Defendants' production of responsive documents remained deficient. (Letter of Adam R. Pulver dated May 22, 2012 at 1, ECF No. 33.)  The letter informed the Court that on May 17, 2012, Plaintiff had spoken to Defendants' counsel who indicated "[they] . . . would receive more voluminous disciplinary records and personnel files for all of the officers by May 21, 2012, 'at the latest,'" (Id. at 2), but no such documents had been received. (Id.)  By Memo Endorsement dated May 23, 2012, the Court ordered Defendants to produce all outstanding documents immediately or face sanctions for failing to adhere to the Court's previous orders. (Id.)

By letter dated May 23, 2012, Plaintiff's counsel informed the Court that he had received approximately 3,000 pages of heavily redacted documents, but that the production of documents "did not enclose any cover letter identifying how the documents correspond to the categories in plaintiff's document requests" in violation of Fed. R. Civ. P. 34(b)(2)(E)(i). (Letter of Adam Pulver dated May 23, 2012.)  On May 31, 2012, Plaintiff's counsel informed the Court that

3

Defendants still had not complied with the Court's order of May 23, 2012. (Letter of Adam R. Pulver dated May 31, 2012 at 1.) Plaintiff's counsel stated that they had received approximately 4,000 pages of heavily redacted documents which primarily related to inmate-on-inmate assaults in 2008. (Id.) Plaintiff's counsel also informed the Court that the settlement conference had been rescheduled for June 27, 2012.[2] (Id. at 2.)

### C. The June 7, 2012 Conference

In view of Plaintiff's counsel's letter of May 31, 2012, the Court held a conference in this matter on June 7, 2012 to resolve the ongoing discovery dispute. Present at the conference for Defendants were Assistant Corporation Counsel Diep Nguyen and her supervisor, Dara Weiss. The Court informed the parties that it had ordered the conference because Defendants had failed to respond to Plaintiff's counsel's letters detailing Defendants' discovery deficiencies. (Tr. of June 7, 2012 Hr'g ("Tr. 6/7/12") at 1.) Plaintiff's counsel informed the Court that they had received a rolling production of about 5,500 pages of heavily redacted documents that were provided without cover letters or a privilege log. Plaintiff's counsel stated that Defendants' redactions were unnecessary in light of the protective order that was in place. Furthermore, Plaintiff stated that he had not received a significant set of documents generated by the "Gang Intelligence Unit" at Rikers Island. (Id. at 4.) Plaintiff's counsel informed the Court that they had independently obtained some of these documents from "the media, who obtained [the documents] from the Gang Intelligence Unit," (Id. at 14), and "not a single page from the Gang Intelligence Unit has been provided in this case." (Id. at 15.)

---

[2] On May 23, 2012, Magistrate Judge Frank Maas granted Plaintiff's application to adjourn the May 30, 2012 settlement conference based on Defendants having "resisted producing relevant discovery that is central to Plaintiff's claims." (Letter of Adam R. Pulver dated May 22, 2012, ECF No. 32.)

In response, Defendants' counsel stated that they had produced all responsive documents with respect to inmate-on-inmate assaults while conceding that they did not provide cover letters for all the documents nor provide a privilege log. (Id. at 7.) Ms. Weiss stated that Defendants would remedy the cover letter deficiency and attempt to unredact as many documents as possible by June 11, 2012. (Id. at 10, 11.) Defendants' counsel also stated that they would provide a detailed privilege log for any redactions that remained in place after further review. (Id.) The Court ordered that in view of the protective order in this case, only sensitive medical information should be redacted.[3] (Id. at 30.)

Ms. Weiss informed the Court that Defendants would attempt to obtain the responsive Gang Intelligence Unit documents in "very short order." (Id. at 20-21.) The Court ordered that Defendants provide cover letters and a privilege log for all the documents already produced by June 11, 2012. (Id. at 10.) Additionally, the Court ordered all the responsive Gang Intelligence Unit documents to be produced by June 15, 2012. (Id. at 31.) Plaintiff was to provide the Court with an update on Defendants' cover letter compliance by June 13, 2012.

**D. The June 2012 Correspondence**

By letter dated June 13, 2012, Plaintiff's counsel stated that "while Defendants have substantially complied with the Court's orders [from the June 7, 2012 conference], several important categories of documents in the 'First Stage' of discovery remain outstanding." (Letter of Adam R. Pulver dated June 13, 2012 at 1, ECF No. 35.) Thus, Plaintiff's counsel requested "that the Court order (1) the immediate production of documents responsive to Requests Nos. 9 and 21; and (2) confirmation that all documents responsive to Requests Nos. 10, 14, 15, 18, 25,

---

[3] The Court subsequently granted Defendants' application to redact certain identifying information of inmates from the memoranda generated by the Gang Intelligence Unit. (See Letter of Diep Nguyen dated June 18, 2012.)

27 have been produced or will be produced by June 15, 2012." (Id. at 2.) By Memo

Endorsement dated June 14, 2012, the Court ordered that "[d]efendants are to produce the

documents responsive to Nos. 9 and 21 and to confirm all documents responsive to Nos. 10, 14,

15, 18, 15 and 27 by June 15, 2012." (Id.)

By letter dated June 20, 2012, Plaintiff's counsel informed the Court that Defendants had

failed to  produce all documents responsive to Document Requests Nos. 9 and 21.  Moreover,

Defendants failed to confirm that they had produced all documents responsive to Document

Requests Nos. 14, 15, 18, 21,  25, and 27. (Letter of Adam R. Pulver dated June 20, 2012 at 2,

ECF No. 38.)  Plaintiff's counsel further stated that:

> In addition to the Court's June 14, 2012 Order, Defendants were ordered on June
> 7, 2012 to produce all Intelligence Unit documents responsive to the various
> document requests by June 12, 2012. Although Defendants have produced
> thousands of pages of highly relevant "Intradepartmental Memoranda" for
> individual incidents, including dozens of incidents of Program-related
> intimidation and violence, there are a number of responsive documents that
> Defendants' counsel knows exists but have, inexplicably, not been produced.
> These documents include far more detailed  investigations into both specific
> incidents, and the patterns of violence at RNDC, and bear a variety of titles
> including "Field Investigations" and "Serious Injury to Inmate Investigations."
> These documents should be produced immediately.

(Id.)

By letter dated June 20, 2012, Defendants' counsel informed the Court that on June 14,

2012, they had received approximately 5,600 documents from the Gang Intelligence Unit

regarding inmate-on-inmate assaults at RNDC. (Letter of Diep Nguyen dated June 20, 2012 at 2,

ECF No. 39.)  As of June 20, 2012, Defendants' counsel stated that almost 14,000 documents

had been produced to Plaintiff. (Id.) "Defendants submit that we have complied with Your

Honor's Orders regarding production of documents pertaining to inmate-on-inmate violence at

6

RNDC to allow Plaintiff to evaluate whether there is evidence of <u>Monell</u> liability." (<u>Id.</u>) Defendants' counsel also stated that the "the personnel files of seventeen (17) officers who were assigned to 2 Lower North [RNDC] for the period in question" had been produced. (<u>Id.</u>) Defendants' counsel informed the Court that they were unable to retrieve the personnel files of "several officers" who were assigned to 2 Lower North in 2010 because they were either retired or assigned to another facility. (<u>Id.</u>) Defendants' counsel noted, however, that they had produced the "disciplinary history" of all 32 officers assigned to 2 Lower North at RNDC during the relevant time period. (<u>Id.</u>)

Defendants' counsel also informed the Court that Plaintiff sought documents entitled "Inmate Reports of an Alleged Assault." (<u>Id.</u>) Defendants contended that Plaintiff's request for these documents were duplicative "as the investigations pertaining [to] the assaults are set forth in the approximately 5,600 [Gang Intelligence Unit] documents that Plaintiff already has in his possession." (<u>Id.</u>) The letter closes, "Defendants respectfully submit that we have complied with the Court's Orders and complied with the discovery at this time so that Plaintiff can have an opportunity to evaluate his claims for the settlement conference . . . ." (<u>Id.</u>)

By letter dated June 21, 2012, Plaintiff's counsel wrote "to respond to Defendants' June 20 Letter in defense of their limited, untimely production." (Letter of Adam Pulver dated June 21, 2012 at 1, ECF No. 37.) Once again, Plaintiff's counsel stated that Defendants' latest production was "essentially a 'document dump' . . . with 5,000 undifferentiated pages" identified in a cover letter that simply stated:

> Please note that the following documents pertain to inmate-on-inmate assaults and/or investigations into the alleged "Program" and/or inmate-on-inmate assaults at RNDC and are responsive to your Document Request Nos. 14,15,18, 21, 25, and 27: DEFENDANTS 1 DEFENDANTS 3174 and DEFENDANTS 3556 - DEFENDANTS 5657.

(Id. at 1-2.)

Plaintiff's counsel also informed the Court that Defendants "do not appear to have produced any documents responsive to Document Request No. 21."[4] (Id. at 2-3 (emphasis in original).) As further outlined in Plaintiff's July 2, 2012 letter, discussed infra, Plaintiff claimed that Defendants had still not produced documents that detail the "extensive investigations" that occur after an inmate-on-inmate assault. (Id. at 2.) Lastly, Plaintiff noted that Defendants remained deficient in producing the personnel files for all officers assigned to 2 Lower North at RNDC during the relevant time period. (Id. at 3.)

In response, Defendants submitted a letter to the Court on June 22, 2012 which stated in relevant part:

> Defendants submit that we have produced to plaintiff everything that the Court has ordered us to produce during the April conference and the June 7, 2012 conference. Frankly, with the exception of the six personnel files stated above, we do not understand why plaintiff claims that we have not complied with Your Honor's Orders when we believe that we have complied with them. As stated in defendants' June 20, 2012 letter, we have produced approximately 14,000 documents to plaintiff to date, which include, inter alia, documents detailing interviews with all inmates in every housing area at RNDC after the death of Christopher Robinson, documents detailing interviews with all inmates involved in inmate-on-inmate assaults at RNDC from 2008 to the present, documents detailing interviews with inmates who are released on bail or on their own recognizance from RNDC to ascertain whether they are claiming that "the Program" exists at RNDC, documents detailing interviews with confidential informants to ascertain the reasons behind the fights, interviews with inmates whose accounts appear to have an unusually large amount of money to ascertain the sources of the money, and interviews with inmates to determine if they have any gang affiliation to ascertain their threat, if any, to the safety other inmates and officers.

---

[4] Document Request No. 21 calls for "Copies of all complaints, allegations and requests for investigation communicated to DOC from any source (including, without limitation the Legal Aid Society Prisoners' Rights Project and the New York City Board of Correction) and responses by the DOC with respect to any and all allegations of inmate-on-inmate assaults at RNDC, violence between or among inmates at RNDC and/or The Program for incidents that occurred between June 26, 2007 and the present."

Plaintiff now seeks "Field Investigations" and "Serious Injury to Inmate Investigations," which plaintiff has not sought before and which defense counsel has never come across in this litigation or previous litigations on behalf of the Department of Correction. It appears to defendants that plaintiff is moving into "Phase Two" of their discovery requests, and rather than contacting defendants to seek these documents, plaintiff instead chose to write to the Court. Because these documents have not been sought by plaintiff before, defendants respectfully request that we be given time to ascertain if they exist, whether or not they are relevant, and then respond to plaintiff's demands.

(Letter of Diep Nguyen dated June 22, 2012 at 3, ECF No. 42.)

By letter dated July 2, 2012, Plaintiff's counsel informed the Court that Defendants had only produced preliminary reports of inmate-on-inmate assaults which are written within 24 hours of the incident, and that Defendants had failed to produce documents detailing later investigations which may include "the extent of inmate injuries, possible staff complicity, and steps taken by the Department of Correction central office to address the continuing problem of gang-initiated assaults . . . ." (Letter of Adam R. Pulver dated July 2, 2012 ("Pulver Letter 7/2/12") at 2.) Accordingly, Plaintiff's counsel asserted that "Field Investigations" and "Serious Injury to Inmate Investigations" are responsive to Document Requests Nos. 14 and 25.[5] (Id.) Indeed, Document Request No. 14 calls for:

All communications between June 26, 2007 and the present, including electronic communications, concerning inmate-on-inmate assaults at RNDC, violence between or among inmates at RNDC and/or The Program by all persons assigned to the following DOC positions: The Commissioner of Correction; Chief of Department; staff assigned to the Intelligence Unit and/or Gang Intelligence Unit; Deputy Directors of Investigations; Investigation Division Supervisors [listing more positions].

---

[5] Plaintiff's July 2, 2012 letter states that the documents entitled "Field Investigations" and "Serious Injury to Inmate Investigations" are responsive to Document Requests Nos. 14 and 24. Plaintiff then quotes the language of Document Requests Nos. 14 and 25. As Document Request No. 24 is not outstanding, the Court will assume Plaintiff is referring to Document Request 25.

(Appendix A.)  While Document Request No. 25 calls for:

> All documents maintained in the Intelligence Unit concerning assaults or allegations of inmate-on-inmate at RNDC, violence between or among inmates at RNDC and/or The Program for incidents that Occurred between June 26, 2007 and the present.

(Id.)  Additionally, Plaintiff's counsel once again reiterated that Defendants have failed to produce the personnel records of six officers who were assigned to 2 Lower North at RNDC. (Id. at 2.)  Plaintiff acknowledged that he was in possession of the disciplinary records for those six officers, but stated that "there is little or no information about the incident that led to that discipline, which is only contained in the full personnel file." (Id.)

## II.      The Court Will Impose Sanctions

Despite numerous Orders from the Court, Defendants failed to confirm that they have produced all documents responsive to Document Requests Nos. 10, 14, 15, 18, 25, and 27. While Defendants submit "that [they] have produced to plaintiff everything that the Court has ordered us to produce during the April conference and the June 7, 2012 conference," it appears there also are still investigative documents outstanding responsive to Plaintiff's discovery requests.  It is not an adequate justification that Defendants' counsel is not familiar with "Field Investigations" and "Serious Injury to Inmate Investigations."  In view of Document Requests Nos. 14 and 25, Defendants' counsel should have already produced the documents or denied their existence.  The time has long passed for Defendants to be conducting searches for relevant documents which should have been turned over to Plaintiff months ago.  Defendants have also failed to produce the personnel records (Document Request No. 9.) of six officers who were assigned to 2 Lower North during the relevant time period.  Defendants' justification that the officers had either retired or been reassigned to another facility is without merit.  Defendants

10

have had over six months to locate and produce the personnel files. Lastly, Defendants do not deny that they have failed to turn over documents responsive to Document Request No. 21.

The Court is well aware that Defendants have produced voluminous amounts of discovery. It is not Defendants' counsel's role, however, to determine the sufficiency of discovery for Plaintiff's counsel. If the documents were not of relevance to the Complaint, Defendants should have moved for relief. Nor is it Defendants' prerogative to deem certain responsive documents as "duplicative." The Court has repeatedly ordered Defendants to produce all discovery responsive to Plaintiff's "First Stage" requests. Defendants have failed to do so.

Plaintiff's counsel informed the Court that the parties were not able to reach a settlement agreement at the June 27, 2012 conference with Magistrate Judge Maas. (Pulver Letter 7/2/12 at 3.) Defendants' failure to produce the necessary discovery in all possibility hindered any effort of settlement in this case. By their repeated failure to comply with the Court's Orders, Defendants have left the Court with no choice but to impose sanctions. It is well within this Court's discretion to impose appropriate sanctions as long as those sanctions are "just" and "relate to the particular claim to which the discovery order was addressed." Shcherbakovskiy v. Seitz, No. 03 Civ. 1220 (RPP), 2010 WL 3155169, at *8 (S.D.N.Y. July, 30, 2010) (quoting Daval Steel Prods. V M/V Fakredine, 951 F.2d 1357, 1366 (2d Cir. 1991.) The imposition of sanctions under Rule 37 is necessary to discourage dilatory tactics and to avoid a situation where compliance with discovery orders comes "only when the backs of counsel and the litigants [are] against the wall." Sieck v. Russo, 869 F.2d 131, 134 (2d Cir.1989).

Therefore, based on Defendants' counsel's failure to respond to Plaintiff's Document Requests Nos. 9, 14, 21, and 25, the Court imposes sanctions on the New York City Law

11

Department in the amount of $10,000.  The Court further orders sanctions upon Assistant

Corporation Counsel Diep Nguyen in the amount of $300, and upon Assistant Corporation

Counsel Dara Weiss in the amount of $300.  Defendants are ordered to confirm production of all

"First Stage" discovery by July 20, 2012 or face further sanctions on the Law Department of

$1000 a day for every day after July 20, 2012 until such production is complete.

IT IS SO ORDERED.

Dated:  New York, New York
         July 9, 2012

                        Robert P. Patterson, Jr.
                        U.S.D.J.

12

# APPENDIX A

Interrogatory No. 4:   Identify any and all persons, including DOC employees, who, between June 26, 2007 and the present, were questioned, either formally or informally, by the DOC or any officer or employee thereof, any District Attorney's Office, the United States Attorney's Office for the Southern District of New York, and/or any federal, state, or local law enforcement or other agency about allegations of or inmate-on-inmate assaults at RNDC, violence between or among inmates at RNDC and/or The Program, and the names of those who questioned such persons.

Interrogatory No. 7: Identify every document that describes, concerns, references and/or mentions, in whole or in part, The Program created and/or prepared between June 26, 2007 and the present.

Interrogatory No. 8:  Identify every type of document that is generated pursuant to DOC practice or policy whenever there is an inmate-on-inmate assault.

Interrogatory No. 12: Identify - by name and NYSID number and photograph - any and all inmates assigned or transferred to housing area 2 Lower North at RNDC from June 20, 2010 through June 28, 2010.

Interrogatory No. 18: Identify - by their parties' names, the court, the docket or index number, and the lawyer representing the plaintiff(s) - each and every lawsuit brought against any individual and/or the City for injuries allegedly caused by an inmate-on-inmate assault at RNDC. In responding to this answer, you shall limit your response to lawsuits which alleged incidents that occurred between June 26, 2007 to the present.

Document Request No. 6:  The most recent photographs in DOC records of the officers and captains who were assigned to RNDC housing area 2 Lower North, or to escort inmates assigned to 2 Lower North, from June 20, 2010 through June 28, 2010 ("the 2LN Officers").

Document Request No. 9: The personnel files and institutional files of each of the 2LN Officers, including the pre-employment psychological screening tests and evaluations.

Document Request No. 10: The most recent DOC "22R forms" prepared for each of the 2LN Officers.

Document Request No. 14: All communications between June 26, 2007 and the present, including' electronic communications, concerning inmate-on-inmate assaults at RNDC, violence between or among inmates at RNDC and/or The Program by all persons assigned to the following DOC positions: The Commissioner of Correction; Chief of Department; Staff assigned to the Intelligence Unit and/or Gang Intelligence Unit; Deputy Directors of Investigations; Investigation Division Supervisors; Chief of

Staff; Deputy Chief of Staff; Chief of Facilities Operations; Chief of Custody
Management; Deputy Commissioner; Investigations; Deputy Director(s) of
Investigations; Assistant Chief of Special Operations; Assistant Chief, Division I;
Assistant Chief, Division II; Chief, Custody Management; Chief, Administration;
Deputy Warden or Warden in Command, Special Operations Division; Wardens and
Deputy Wardens for Security and or Deputy Warden in Command at RNDC.

Document Request No. 15: All communications between June 26, 2007 and the
present, including electronic communications, by all persons employed by the New
York City Board of Correction, including but not limited to the Executive Director,
Deputy Director, Chief of Field Operations and Field Workers, concerning inmate-
on-inmate assaults at RNDC, violence between or among inmates at RNDC and/or
The Program.

Document Request No. 18: All communications between June 26, 2007 and the
present, including electronic communications, between the DOC, including but not
limited to the offices of the Commissioner, Chief of Department, Chief of Facility
Operations and Deputy Commissioner for Investigations, and the New York City
Board of Correction or the New York State Commission on Correction and (b) the
Office of the Criminal Justice Coordinator, or the Office of the Mayor, or the
Department of Investigation, or the United States Department of Justice, or the offices
of the Bronx, Queens, Brooklyn or Manhattan District Attorney concerning inmate-
on-inmate assaults at RNDC, violence between or among inmates at RNDC and/or
The Program.

Document Request No. 21: Copies of all complaints, allegations and requests for
investigation communicated to DOC from any source (including, without limitation
the Legal Aid Society Prisoners' Rights Project and the New York City Board of
Correction) and responses by the DOC with respect to any and all allegations of
inmate-on-inmate assaults at RNDC, violence between or among inmates at RNDC
and/or The Program for incidents that occurred between June 26, 2007 and the
present. Responsive documents include, without limitation, allegations directed or
referred to the Investigation Division and "Inmate Reports of an Alleged Assault"
forwarded by the Inmate Grievance Committees of the facilities (DOC Form 7316R).

Document Request No. 25: All documents maintained in the Intelligence Unit
concerning assaults or allegations of inmate-on-inmate at RNDC, violence between or
among inmates at RNDC and/or The Program for incidents that occurred between
June 26, 2007 and the present.

Document Request No. 27: All Unusual Incident Reports or Incident Reports
concerning inmate-on-inmate assaults at RNDC, allegations of inmate-on-inmate
assaults, violence between or among inmates at RNDC and/or The Program for
incidents that occurred between June 26, 2007 and the present.

Copies of this order were faxed to:

*Counsel for Plaintiff:*

Adam R Pulver
Emery Celli Brinckerhoff & Abady, LLP
75 Rockefeller Plaza
20th Flr.
New York, NY 10019
(212)-763-5000
Fax: (212)-763-5001

*Counsel for Defendant:*

Diep Nguyen
New York City Law Department
100 Church Street
New York, NY 10007
(212)-341-9848
Fax: (212)-788-9776

Dara Weiss
New York City Law Department
100 Church Street
New York, NY 10007
(212)-341-9848
Fax: (212)-788-9776